
**SO ORDERED.**

**SIGNED this 07 day of March, 2013.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

**IN RE:**

| | |
|---|---|
| ROSS TYLER GREGORY AND<br>BARBARA JANE GREGORY | CASE NO. 12-06668-8-JRL |
| BRIANNA MICHELLE HOWARD | CASE NO. 12-06847-8-JRL |
| JOSEPH JAMES MOYLAN, JR. AND<br>PATRICIA BIGSBY MOYLAN | CASE NO. 12-06693-8-JRL |
| LILIAN LEE NEISWENDER | CASE NO. 12-02763-8-JRL |
| DOUGLAS JAMES PERRY | CASE NO. 12-05451-8-JRL |
| STEPHEN CARLYLE QUINTYNE AND<br>DJAMILA DJURAEVA QUINTYNE | CASE NO. 12-05538-8-JRL |
| STEVEN ROBERT STEWART AND<br>DENISE MORRISON STEWART | CASE NO. 12-05456-8-JRL |
| **DEBTORS.** | **CHAPTER 7** |

### ORDER

These matters came before the court on the objection of Gregory B. Crampton ("trustee") to the above–captioned debtors' claims of exemptions in Schedule C–1 of their petitions. A hearing

on the matters took place on January 15, 2013 in Raleigh, North Carolina. At the conclusion of the hearing, the court took the matter under advisement.

## BACKGROUND

Each of the above–captioned debtors (collectively "debtors") filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code between April 10, 2012 and September 25, 2012. The trustee was appointed as chapter 7 trustee and conducted the meeting of creditors pursuant to § 341(a) in each case. The Schedule C–1, filed by the debtors in each case, contained the following prefatory paragraph:

> We, . . . the undersigned Debtors, claim the following property as exempt pursuant [to] § 522 and the laws of the State of North Carolina and non–bankruptcy Federal law. **Undersigned Debtors are claiming and intend to claim 100% of Debtors' interest and 100% fair market value in each and every item listed, irrespective of the actual value claimed as exempt.**

(emphasis in original) (hereinafter "100% language").

The trustee timely objected to the 100% language present in the prefatory paragraphs of the debtors' Schedule C–1. According to the trustee, the debtors were not entitled to exempt 100% of their interest or 100% of the fair market value in every item listed as exempt, irrespective of the item's actual value. Because this language was precatory, it would apply to each of the items claimed by the debtors as exempt in their Schedule C or Schedule C–1. Responding to the objections raised by the trustee, the debtors indicated that they would amend their Schedule C–1 to delete the language forming the basis of the trustee's objection. [1]

---

[1] For example, in the case of Steven Stewart and Denise Stewart, the debtors filed an amended Schedule C–1 on October 8, 2012, removing the 100% language and replacing it with an asterisk accompanied by the following phrase:

> Debtors exempt their entire interest in this asset [the debtors' residence, pursuant to N.C. Gen. Stat. § 1C–1601(a)(1) and N.C. Const., art. X, § 5]. Should the trustee or

The amended Schedule C–1 removed the 100% language in the prefatory paragraph and to address further objections by the trustee, the debtors submitted to the court and the trustee the following provision amending their Schedule C–1:

> NOTICE: With respect to each asset claimed as exempt on this Claim of Exemptions, the debtor asserts that the value listed is the actual fair market value on the date of the petition, and that the nature and/or use of the asset is such that it qualifies for the exemption claimed. The debtor also asserts that the liens listed are valid and enforceable liens against the asset and the amount of each lien is accurate as of the date of the petition. **If the "net value" of an asset listed below is equal to or less than the amount of the exemption claimed and if that value is less than the maximum amount of the exemption allowance under applicable law, the debtor exempts the asset from the estate and his entire interest in the asset from the estate.** If the "net value" is greater than the amount of the exemption claimed or the maximum amount of the exemption allowance under applicable law, he limits his claim of exemptions to the lesser of the amount claimed or the maximum amount allowed under the law. Where the value of an asset is listed as "unknown" and the asset is claimed as exempt pursuant to a provision that limits the maximum amount of the allowable exemption to that maximum amount, neither the trustee no[r] any party in interest needs to object to the claim of exemption to preserve for the estate any value that actually exceeds the allowable amount of the exemption.

(emphasis added) (hereinafter "notice provision" or "provision"). This provision, placed at the top of the Schedule C–1, presents three separate scenarios for each item listed as exempt. First, debtors exempt the asset and their entire interest from the estate where the "net value" of the asset is *less than or equal to* the claimed exemption and the "net value" is *less than* the maximum exemption amount allowed under applicable law. Second, if the "net value" of the asset is *greater than* the

---

> any other party in interest believe that the debtors' equity in the property exceeds **$60,000.00,** that party should timely object to the valuation of the property and the right to exempt the property from the estate within 30 days of the conclusion of the 341 creditors meeting.

(emphasis in original) (hereinafter "asterisk phrase"). According to the trustee, the asterisk phrase allows the debtors to claim more than the $60,000.00 allowed under North Carolina law. Additionally, the asterisk does not reference any item within the Schedule C–1. In correspondence with the court, counsel for the debtors stated that he will discontinue use of this asterisk phrase.

3

exemption amount claimed or the maximum amount allowed under applicable law, the claim of exemptions is limited to the lesser of the amount claimed or the maximum allowed by applicable law. Third, where a value of "unknown" is assigned to the asset, the value of the debtors' exemption is expressly limited to the maximum amount allowed by statute, and neither the trustee nor a party in interest need object to preserve any value for the estate that exceeds the allowable amount of the exemption. The debtors have clearly sought to maximize their exemptions by inserting this provision. However, the effect of the phrase emphasized above would permit the debtors to exempt their entire interest of every item listed in the debtors' Schedule C–1 whenever the "net value" is less than the allowable exemption, irrespective of the item's actual fair market value. To illustrate, as the court understands this language, if an individual debtor listed the "net value" in his residence as $30,000.00 and claimed that amount as exempt, the trustee would be unable to administer the property if his investigation revealed the value to be higher unless he had timely objected; this is so despite the fact that the $30,000.00 is within the permissible exemption amount.

Although satisfied with the portions regarding a "net value" greater than the maximum exemption allowed and an "unknown" valuation attributed to an exemption, the trustee contends that the remainder of the provision requires him to object within the thirty–day period proscribed by Federal Rule of Bankruptcy Procedure 4003 (hereinafter "Bankruptcy Rule 4003"), to preserve his right to subsequently administer the property. Neither the Bankruptcy Code nor Schwab v. Reilly, \_\_\_ U.S. \_\_\_, 130 S. Ct. 2652 (2010) require the trustee to object to a claim of exemption, based on a debtor's scheduled value of the item. The emphasized portion of this provision, according to the trustee, interposes ambiguity into the debtors' claims for exemptions, causing him and other trustees

4

to guess whether the debtors are claiming an exemption in the item itself, regardless of any statutory limitation placed on the amount of the particular exemption.

The debtors contend that the notice provision would, in the absence of a timely objection by the trustee under Bankruptcy Rule 4003, allow an exemption for the entire value of the item or the situation to which the emphasized portion applies. The debtors maintain that, under Schwab, they are authorized to claim the full value of an item as exempt and the notice provision is sufficient to indicate their intent to claim, as exempt, their entire interest in an item in accordance with North Carolina law.

## DISCUSSION

When a debtor files a voluntary petition for relief under chapter 7, a bankruptcy estate is created that contains "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Bankruptcy Rule 4003(a) provides that every "debtor shall list the property claimed as exempt under § 522 of the [Bankruptcy] Code on the schedule of assets required to be filed by Rule 1007." Fed. R. Bankr. P. 4003(a); Fed. R. Bankr. P. 1007. The trustee or a party in interest must "file an objection to the list of property claimed as exempt . . . within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Fed. R. Bankr. P. 4003(b). "Unless a party in interest objects, the property claimed as exempt . . . is exempt." 11 U.S.C. § 522(l). Even where an exemption claimed on Schedule C is without legal justification and the debtor "ha[s] no colorable statutory basis for claiming it the exemption[,]" it will stand absent an objection from a party in interest within the thirty–day period. Taylor v. Freeland & Kronz, 503 U.S. 638, 642–43 (1992). The Supreme Court established, in Taylor, "the

straightforward proposition that an interested party must object to a claimed exemption if the amount the debtor lists as the 'value claimed exempt' is not within statutory limits, a test the value ($ unknown) in Taylor failed . . . ." Schwab, 130 S. Ct. at 2666 (distinguishing Taylor). "Bankruptcy Rule 4003 (c) provides that in cases involving objections to exemptions, 'the objecting party has the burden of proving [by a preponderance of the evidence] that the exemptions are not properly claimed." In re Britt, 368 B.R. 471, 474 (Bankr. E.D.N.C. 2007) (quoting Fed. R. Bankr. P. 4003(c)); In re Man, 428 B.R. 644, 653 (Bankr. M.D.N.C. 2010).

Schwab modified Taylor by recognizing that where the face value of a debtor's exemption is valid, the objection deadline set forth in Bankruptcy Rule 4003 is inapplicable, and the trustee is not required to object to preserve the estate's right to retain any value beyond the value of the exempt interest claimed by the debtor. 130 S. Ct. at 2669. In Schwab, the debtor claimed an exemption in certain business equipment in a specific dollar amount, which was within the limit permitted by § 522(d). Id. at 2658. The debtor objected to the sale of her business equipment by the trustee, arguing that she had exempted it in its entirety by claiming the exemption in an amount equal to its estimated value. Id. The court observed:

> Where[] . . . a debtor accurately describes an asset subject to an exempt interest and on *Schedule C declares the "value of [the] claimed exemption" as a dollar amount within the range the Code allows*, interested parties are entitled to rely upon that value as evidence of the claim's validity. Accordingly, we hold that Schwab [the trustee] was not required to object to [the debtor]'s claimed exemptions in her business equipment in order to preserve the estate's right to retain any value in the equipment beyond the value of the exempt interest.

Id. at 2669 (emphasis added). Thus, the trustee is relieved of the obligation to object to a claim of exemptions, unless the basis for that objection is found on the face of Schedule C. See id. at 2665.[2]

---

[2] The court, in Schwab, indicated that the debtors could express an intent to exempt the entire asset "by listing the exempt value as 'full fair market value (FMV)' or '100% of FMV'" of

6

The thirty–day time limit in Bankruptcy Rule 4003 only applies to objections based on "three, and only three" entries on a debtor's claim of exemptions in Schedule C: (1) the description of the property claimed as exempt; (2) the Bankruptcy Code provisions governing the exemption claimed; and (3) the amount listed in the column titled "value of claimed exemption." Id. at 2663. Where the basis of the objection is on any other entry, such as the fair market value assigned to the exempt property by the debtor, the thirty–day time limit does not apply. Id. at 2665 n. 15. The court further observed, in a footnote of its opinion, that values assigned to claimed exemptions such as "unknown," "to be determined," or "100%" would be sufficient to signal to the trustee an objection is warranted. Id. at 2666 n. 16.

North Carolina has opted out of the federal exemption scheme; therefore, debtors must comply with North Carolina's procedural and substantive requirements to properly claim exemptions in bankruptcy. N.C. Gen. Stat. § 1C–1601(f) ("The exemptions provided in the Bankruptcy Code, 11 U.S.C. § 522(d), are not applicable to residents of this State. The exemptions provided by this Article and by other statutory or common law of this State shall apply for purposes of The Bankruptcy Code."); accord In re Pinner, 146 B.R. 659, 660 (Bankr. E.D.N.C. 1992). The North Carolina exemption scheme, outlined in N.C. Gen. Stat. § 1C–1601(a), entitles a debtor to exempt

---

the asset. 130 S. Ct. at 2668. "If a debtor fails to make clear by some such formula his or her intent to claim the entire asset, the asset itself will remain property of the estate, subject only to the debtor's exemption of the interest provided for in section 522(d) [or applicable state law]." In re Moore, 442 B.R. 865, 867 (Bankr. N.D. Tex. 2010) (recognizing that "[b]ecause the asset remains in the estate, it remains subject to administration in the case even absent a timely objection to the debtor's list of exemptions in accordance with Fed. R. Bankr. P. 4003(b)(1)." (internal footnote omitted)). The Bankruptcy Appellate Panel for the Ninth Circuit, interpreting Schwab, indicated "that neither the trustee nor the bankruptcy court need to struggle to divine a debtor's 'intent' underlying claimed exemptions or look beyond the face of Schedule C to figure out what the debtor 'meant' to exempt." In re Slates, No. EC–12–1168, 2012 WL 5359489, at *8 n. 6 (B.A.P. 9th Cir. Oct. 31, 2012).

the following property:

(1) The debtor's aggregate interest, not to exceed thirty-five thousand dollars ($35,000) in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor; however, an unmarried debtor who is 65 years of age or older is entitled to retain an aggregate interest in the property not to exceed sixty thousand dollars ($60,000) in value so long as the property was previously owned by the debtor as a tenant by the entireties or as a joint tenant with rights of survivorship and the former co-owner of the property is deceased.

(2) The debtor's aggregate interest in any property, not to exceed five thousand dollars ($5,000) in value of any unused exemption amount to which the debtor is entitled under subdivision (1) of this subsection.

(3) The debtor's interest, not to exceed three thousand five hundred dollars ($3,500) in value, in one motor vehicle.

(4) The debtor's aggregate interest, not to exceed five thousand dollars ($5,000) in value for the debtor plus one thousand dollars ($1,000) for each dependent of the debtor, not to exceed four thousand dollars ($4,000) total for dependents, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(5) The debtor's aggregate interest, not to exceed two thousand dollars ($2,000) in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor.

(6) Life insurance as provided in Article X, Section 5 of the Constitution of North Carolina.

(7) Professionally prescribed health aids for the debtor or a dependent of the debtor.

(8) Compensation for personal injury, including compensation from private disability policies or annuities, or compensation for the death of a person upon whom the debtor was dependent for support, but such compensation is not exempt from claims for funeral, legal, medical, dental, hospital, and health care charges related to the accident or injury giving rise to the compensation.

(9) Individual retirement plans as defined in the Internal Revenue Code and any plan treated in the same manner as an individual retirement plan under the Internal Revenue Code, including individual retirement accounts and Roth retirement

accounts as described in section 408(a) and section 408A of the Internal Revenue Code, individual retirement annuities as described in section 408(b) of the Internal Revenue Code, and accounts established as part of a trust described in section 408(c) of the Internal Revenue Code.

(10) Funds in a college savings plan qualified under section 529 of the Internal Revenue Code, not to exceed a cumulative limit of twenty-five thousand dollars ($25,000), but excluding any funds placed in a college savings plan account within the preceding 12 months (except to the extent any of the contributions were made in the ordinary course of the debtor's financial affairs and were consistent with the debtor's past pattern of contributions) and only to the extent that the funds are for a child of the debtor and will actually be used for the child's college or university expenses.

(11) Retirement benefits under the retirement plans of other states and governmental units of other states, to the extent that these benefits are exempt under the laws of the state or governmental unit under which the benefit plan is established.

(12) Alimony, support, separate maintenance, and child support payments or funds that have been received or to which the debtor is entitled, to the extent the payments or funds are reasonably necessary for the support of the debtor or any dependent of the debtor.

N.C. Gen. Stat. § 1C–1601(a). Section 1–362 of the General Statutes of North Carolina allows debtors to claim an exemption for wages earned during the 60–day period prior to the petition date, if necessary to support the debtor's family. N.C. Gen. Stat. § 1–362; In re Turner, No. 12–03577, 2012 WL 4341311, at *2 (Bankr. E.D.N.C. Sept. 21, 2012). North Carolina law[3] and

---

[3] There are numerous other exemptions provided under North Carolina law: payments made for public aid and assistance, N.C. Gen. Stat. § 108A–36; unemployment compensation, Id. § 96–17; motor vehicle financial responsibility deposits, Id. § 20–279.25; payments to fraternal benefit societies, Id. § 58–25–85; workers' compensation benefits, Id. § 97–21; teacher and state employee pensions, retirement benefits and deferred compensation, Id. §135–9 and § 147–9.4; local government employee retirement benefits, Id. § 128–31; retirement benefits paid to fireman, rescue squad workers and law enforcement officers, Id. § 58–86–80 and § 143–166.30; retirement benefits paid to legislators, Id. § 120–4.29; benefits paid under the Supplemental Retirement Income Act of 1984, Id. § 135–95; disability benefits, Id. § 135–11; policies or proceeds of group life insurance, Id. § 58–58–165; crime victim compensation, Id. § 15B–17; a partner's interest in specific partnership property, Id. § 59–55; payments awarded to the blind for aid and assistance, Id. §  111–18; and property held in tenancy by the entirety, Grabenhofer v. Garrett, 260 N.C. 118, 131 S.E.2d 765 (1963).

non–bankruptcy federal law also provide an array of exemptions available to debtors.

These exemptions can be categorized based on whether the statutory language places a limitation on the value of the exemption available to the debtor. The first category of exemptions allow debtors to exempt items in full, regardless of value. These exemptions, located in subsections (6), (7), (8), (9), (11) and (12) of N.C. Gen. Stat. § 1C–1601 and N.C. Gen. Stat. 1–362, preserve a debtor's interest in the item or property itself, irrespective of the value assigned by the debtor. For example, debtors may exempt, regardless of its value, life insurance as provided by the North Carolina Constitution and professionally proscribed health aids for themselves or their dependants. N.C. Gen. Stat. § 1C–1601(a)(6), (7); N.C. Const., art. X, § 5. The second category, by contrast, allows debtors to exempt an interest in value up to a specified monetary amount in the particular item, asset or property described. Subsections (1), (2), (3), (4), (5) and (10) of N.C. Gen. Stat. § 1C–1601(a) provide debtors with a limited interest exemption, which allows them to exempt their monetary interest therein as opposed to the property itself. Absent from the first and present in the second category of exemptions is the phrase "[t]he debtor's aggregate interest, not to exceed" or "debtor's interest, not to exceed[,]" which proscribes a maximum value for the allowable exemption available to the debtor. N.C. Gen. Stat. § 1C–1601(a); id. at § 1–362; 11 U.S.C. § 522(d) (requiring debtors seeking to exempt their entire interest in the property itself to indicate that fact unambiguously).

The validity of utilizing a designation such as "100% of the FMV," "100% Equity" or comparable language to value exemptions (the value of which are expressly limited to a maximum value by the Bankruptcy Code or applicable state law), has been addressed by several courts

10

following Schwab. See, e.g., In re Orton, 687 F.3d 612, 618 n. 1 (3d Cir. 2012); Mwangi v. Wells Fargo Bank, N.A., 473 B.R. 802, 810 (D. Nev. 2012); Hefel v. Schnittjer (In re Hefel), No. 11–CV–1010–LRR, 2011 WL 3292929, at *4–5 (N.D. Iowa July 29, 2011); Messer v. Maney (In re Messer), Nos. AZ–11–1505, 11–3007, 2012 WL 762828, at *3–4 (B.A.P. 9th Cir. Mar. 9, 2012); Massey v. Pappalardo (In re Massey), 465 B.R. 720, 730 (B.A.P. 1st Cir. 2012) (concluding "that there is no legitimate reason for the Debtors to ignore the burdens imposed by the [Bankruptcy] Code, and reiterated by Schwab, to state their exemptions accurately and in conformance with statutory limits, by identifying the value of the claimed exemption up to or in a specific dollar amount."); In re Hernandez, No. 10–01762, 2012 WL 2202931, at *3 (Bankr. D.P.R. June 14, 2012); In re Luckham, 464 B.R. 67, 77 (Bankr. D. Mass. 2012); In re Salazar, 449 B.R. 890, 897 (Bankr. N.D. Tex. 2011), In re Stoney, 445 B.R. 543, 552 (Bankr. E.D. Va. 2011); In re Winchell, No. 10–05827, 2010 WL 5338054, at *1–2 (Bankr. E.D. Wash. Dec. 20, 2010); In re Moore, 442 B.R. 865, 868 (Bankr. N.D. Tex. 2010).[4] Unless applicable federal or state law allows debtors to exempt their entire interest in an item itself regardless of value, they have no right to utilize language claiming an exemption equal to 100% of the fair market value. See, e.g., Orton, 687 F.3d at 618 ("[W]here the statutory basis for a debtor's claim of exemption provides only for an exemption of an interest in certain property up to a specific dollar amount, the 'value of the claimed exemption' must be identified as a monetary value." (citations omitted)); Hefel, 2011 WL 3292929, at *4 (affirming the bankruptcy court's order sustaining the objections of the trustee to the debtor's exemption of certain business interests as "FMV"); Massey, 465 B.R. at 726; Messner, 2012 WL

---

[4]Uncertainty has plagued exemption practice after Schwab, especially in cases where debtors claim an exemption equal to 100% of the fair–market value of the asset. Stephen W. Sather, "One Year Later: How Has Schwab v. Reilly Changed Exemption Practice?," XXX Am. Bankr. Inst. J. 1, 64 (Nov. 2011).

762828, at *4; Winchel, 2010 WL 5338054, at *1–2 (sustaining the trustee's objection to the debtors' valuation of the claimed exemption in their residence as "Full FMV" because the value of the residence ($200,000.00) exceeded the statutory limit set forth in § 522(d)(1) of the Bankruptcy Code).

Two bankruptcy appellate panels have recently concluded that a debtor may not utilize language exempting 100% of the fair market value of an asset where the statutory scheme authorizing the particular exemption is limited to a maximum monetary amount. See Massey, 465 B.R. at 728; Messer, 2012 WL 762828, at *3–4.  The debtors in Massey did not assign a monetary value to their exemptions for a vehicle and residence in their Schedule C, opting to claim an exemption equal to "100% of FMV." Id. at 721.  The trustee timely challenged these exemptions as improper. Id. at 722.  After examining the case law interpreting Schwab, the Bankruptcy Appellate Panel for the First Circuit adopted the approach taken in Salazar, which was to "declare that an objection to an exemption claim of '100% of FMV' is a facially valid objection because the debtor has failed to claim a set amount as contemplated by the exemption statute allowing the exemption." Massey, 465 B.R. at 728(recognizing that this approach "best recognizes the reasoning in Schwab . . . ." (quoting Salazar, 449 B.R. at 897 )).  Thus, an objection will be "sustain[ed] . . . unless the debtor amends his exemptions to claim a dollar amount for his exempt interest in the property." Massey, 465 B.R. at 728 (quoting Salazar, 449 B.R. at 897).  Similarly in Messer, the chapter 7 debtor claimed 100% of the fair–market value of her vehicle, scheduled at $12,000.00, as exempt under Ariz. Rev. Stat. § 33–1125(8). 2012 WL 762828, at *1.  The claimed exemption in the vehicle exceeded the $5,000.00 allowed under Arizona law. Id.  The Bankruptcy Appellate Panel for the Ninth Circuit held that valuing an exemption as "100% of FMV" did not constitute a "valid

and unobjectionable scheduling of a claimed exemption value where the relevant exempting statute . . . expressly limits the exemption to a maximum cash value." Id. at *3 (quoting Stoney, 445 B.R. at 552).

Likewise in Luckham, the Bankruptcy Court for the District of Massachusetts held that "where the statutory basis for a debtor's claim of exemption provides only for an exemption of an interest in certain property up to a specific dollar amount, the 'value of claimed exemption' must be identified as a monetary value." 464 B.R. at 77. The chapter 13 trustee in Luckham, objected to the debtors' claimed exemption of "100% of Equity" in their residence as exceeding the $21,625.00 allowed pursuant to § 522(d)(1). Id. at 69–71 (equating the debtors' valuation of their exemption as "100% of Equity" as an attempt to procure an unlimited exemption in their residence). In sustaining the trustee's objection, the court observed that "[n]othing in Schwab . . . dictates otherwise[]" and "Schwab itself establishes the very principles which compel this conclusion." Id. at 77 (concluding, under the circumstances and given the basis of the trustee's objection, that an evidentiary hearing on valuation of the residence was not necessary). The court reasoned that requiring the debtors to amend their claim of exemptions "to state a specific dollar value for their claimed . . . exemption does not 'eviscerate' any 'rights' established under Schwab and does not prevent the Debtors from 'employing' any legitimate 'strategy' suggested by the Supreme Court." Id. at 74 (rejecting the argument that Schwab authorized a procedure by which a limited interest exemption could be converted into an exemption in the item itself).

This view is supported by at least one court in the Fourth Circuit. In Stoney, the Bankruptcy Court for the Eastern District of Virginia applied Schwab to the exemption laws of Virginia. 445 B.R. at 720. The trustee objected to the debtor's Schedule C, where she claimed exemptions in

13

certain items having an exemption value of "100% of FMV" pursuant to various provisions of the Virginia Code. Id. at 545–46, 545 n. 2.[5] The trustee argued that the debtor "should not be permitted to exceed the maximum amounts of exempt property set forth in the relevant Virginia Code by language "100% of FMV" or *any other comparable language*." Id. at 546 (emphasis added). The court found the reasoning laid forth in Winchell applicable and concluded that "the designation of '100% of FMV' regarding the values of exemptions claimed . . . fails to satisfy the requirements of Virginia law as made applicable by the Bankruptcy Code . . ." Id. at 554 (sustaining the trustee's objection to the debtor's claim of exemptions); see Winchell, 2010 WL 5338054, at *1–2. Judge St. John reasoned that "[a] non–numerical designation, such as '100% of fair market value,' does not permit the examiner of the exempting document . . . to immediately quantify the debtor's assertion of the value of the exemption of the property without reference to extraneous documents or resources." Stoney, 445 B.R. at 549. In reaching this conclusion, the court emphasized:

> While exemptions have long been liberally construed in favor of debtors, Mayer v. Nguyen (In re Nguyen), 211 F.3d 105, 110 (4th Cir. 2000), that liberality in construction does not extend so far as to allow a debtor to avoid the strict statutory requirements to set forth a cash valuation of the value of the claimed exemption pursuant to the Virginia Code. To achieve the result the Debtor desires—to exempt the full value of the assets at issue—the appropriate forum is the Virginia General Assembly, not this Court.

Id. at 554. The court, however, denied the trustee's request that he not be required to object to exemptions where the debtors claim the value of their exemptions as 100% of fair market value in a scheme to limit them to the statutory amounts set forth in the Virginia Code. Id. at 554–55 (holding that "Schwab does not permit the Court to find that, if the Debtor sets forth an improper

---

[5] To establish her claimed exemptions, the debtor relied on Virginia Code §§ 34–4, 34–6 and 34–14, each of which require a debtor to "affix a cash valuation to both the current value of the property and to the value of the exemption being claimed in the form of a numerical value, i.e., a dollar amount." Stoney, 445 B.R. at 549–50.

or invalid value of a claimed exemption, the trustee need not object to preserve the estate's rights in the exempted property.").

The dispute in Luckham, Messer, Massey, Stoney and the instant case arise from the misinterpretation of the following passage in Schwab:

> Where, as here, it is important to the debtor to exempt the full market value of the asset or the asset itself, our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of the exemption clear, for example, by listing the exempt value as "full fair market value (FMV)" or "100% of FMV."

130 S. Ct. at 2668; see, e.g., Luckham, 464 B.R. at 74 (stating that this passage "by way of example, [is] the type of language that would put parties on notice that the debtor intended to exempt an entire asset and not just a limited interest in the asset."); Stoney, 445 B.R. at 552 (emphasizing that "to interpret Schwab as such would permit a judicial superseding of the state statutory requirements for exemptions and functionally negate the express authority of a state to opt out and impose its exemption limitations—as well as the procedural and substantive requirements necessary to perfect those exemptions—on debtors who are citizens of the opt–out state."); Messer, 2012 WL 762828, at *3–4. Anticipating circumstances where the "100% of FMV" language would not be appropriate, the Schwab Court noted that "[s]uch a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits." 130 S. Ct. at 2668. Therefore, listing the value of an exemption as "FMV," "100% of FMV," or other comparable language to that effect, is wholly inappropriate in instances where the relevant statutory exemption scheme assigns a maximum dollar value to the exemption. See Luckham, 464 B.R. at 75 ("[D]etermin[ing] that nothing in Schwab permits the Debtors here to claim 100% of the equity in the Property as exempt – since § 522(d)(1) allows them

15

to exempt only an 'interest' in the Property 'not to exceed $21,625.'" (citing 11 U.S.C. § 522(d)(1)); Stoney, 445 B.R. at 552; Messer, 2012 WL 762828, at *3.

The emphasized portion of the notice provision in the instant case impermissibly merges the two categories of exemptions present in North Carolina's exemption scheme by permitting the debtors to disregard the distinction drawn between the exemptions subject to a maximum allowable amount and those permitting an exemption in an item itself, irrespective of its value. See, e.g., Schwab, 130 S. Ct. at 2663 n. 10; Messer, 2012 WL 762828, at *3. This portion of provision fails to adequately confine the debtors' claimed exemptions in a manner consistent with the language of the General Statutes of North Carolina limiting certain exemptions to specific monetary amounts. See Luckham, 464 B.R. at 73. The emphasized portion of the notice provision is, as the trustee suggests, an attempt to utilize a non–monetary formula to value their exemptions in amounts exceeding the maximum values proscribed by North Carolina law. See Stoney, 445 B.R. at 554. As explained above, the statutory language of N.C. Gen. Stat. § 1C–1601(a) lists certain exemptions, the value of which are "not to exceed" specific dollar amounts. The notice provision does not accurately claim nor conform to these statutory limits imposed by N.C. Gen. Stat. § 1C–1601(a)(1)–(5), (10). Rather than claiming exemptions "in a manner that makes the scope of the exemption clear[,]" Schwab, 130 S. Ct. at 2668, the notice provision juxtaposes a formula allowing the debtors to circumvent explicit statutory limitations placed on certain exemptions. See Hernandez, ___ B.R. ___, ____, 2013 WL 285590, at *8 (Bankr. D.P.R. Jan. 25, 2013) ("[E]xemptions claimed in bankruptcy must include a specific dollar amount: a general exemption claim of '100% fair market value' is facially invalid." (citing Massey, 465 B.R. at 730)).

## CONCLUSION

Based on the foregoing, the trustee's objections to the emphasized portion of the notice provision are **SUSTAINED.** The court expressly disapproves of this portion of the notice provision because it asserts claimed exemptions in a manner inconsistent with the limitations placed on them by the language of the General Statutes of North Carolina. Should counsel for the debtors persist in further use of this language, the court will not hesitate to utilize its sua sponte powers under Federal Rule of Bankruptcy Procedure 9011 to require counsel to demonstrate a colorable basis for its inclusion to avoid sanctions.

**END OF DOCUMENT**